UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMARILIS COLLADO, as Administratrix of the
Estate of her husband JOHN COLLADO, SR.,

                Plaintiff,

    -against-                              No. 11 Civ. 9041 (DAB)

THE CITY OF NEW YORK, New York City
Police Department ("NYPD") Detective JAMES
CONNOLLY, Shield #4292,

                Defendants.

## PLAINTIFF'S MOTIONS *IN LIMINE*

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## TABLE OF CONTENTS

I.   THERE IS NO TRIABLE ISSUE AS TO WHETHER DET. CONNOLLY
PROXIMATELY CAUSED MR. COLLADO'S INJURIES, AND THE JURY
SHOULD BE INSTRUCTED THAT PROXIMATE CAUSE IS ESTABLISHED...........1

II.  THE TOXICOLOGY REPORTS SHOULD BE EXCLUDED AND ALL
REFERENCES THERETO REDACTED..........................................................................3

III. EVIDENCE OF MR. COLLADO'S PRIOR CONVICTION SHOULD BE
EXCLUDED FOR ALL PURPOSES...................................................................................4

IV.  ALL ARGUMENT AND EVIDENCE THAT MR. COLLADO EVER DID OR
SOLD DRUGS SHOULD BE EXCLUDED.......................................................................6

V.   ANY REFERENCE TO MR. COLLADO AS A "PERP" SHOULD NOT BE
PERMITTED AT TRIAL.....................................................................................................6

VI.  EVIDENCE OF FINDINGS OF OFFICIAL INVESTIGATIONS INTO THE
KILLING SHOULD BE EXCLUDED, AND THE PARTIES SHOULD MINIMIZE
ANY REFERENCE TO THE INVESTIGATIONS............................................................7

VII. ANY REFERENCE TO MR. COLLADO'S DECADES-OLD WRESTLING
SHOULD BE PRECLUDED.................................................................................................8

VIII. DEFENDANTS' EXPERT DANIEL MODELL SHOULD BE PRECLUDED
FROM TESTIFYING.............................................................................................................9

     A.   An Expert Must Be Qualified and an Expert Opinion Must Be Reliable
          and Helpful to the Trier of Fact....................................................................................9

     B.   Mr. Modell Is Not Qualified to Opine on the Physical Effects of Choking..............11

     C.   Mr. Modell's Opinions Are Unreliable......................................................................12

     D.   Mr. Modell Should Be Precluded from Opining on Det. Connolly's Credibility......13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ...................................................................... 10, 11

*Campbell v. Metro. Prop. & Cas. Ins. Co.*,
  239 F.3d 179 (2d Cir. 2012) ........................................................................... 10

*Cerbelli v. City of New York*,
  No. 99 Civ. 6846, 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006)...................... 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993).................................................................................. 10, 12

*Davis v. Velez*,
  15 F. Supp. 3d 234 (E.D.N.Y. 2014) ................................................................ 5

*Duguay v. City of N.Y.*,
  861 F. Supp. 2d 236 (S.D.N.Y. 2012) .............................................................. 1

*Gray v. Wackenhut Servs., Inc.*,
  446 F. App'x 352 (2d Cir. 2011) ...................................................................... 1

*Guzman v. Jay*,
  303 F.R.D. 186 (S.D.N.Y. 2014) ...................................................................... 7

*Higazy v. Templeton*,
  505 F.3d 161 (2d Cir. 2007) ............................................................................. 1

*Hilaire v. DeWalt Indus. Tools Co.*,
  54 F. Supp. 3d 223 (E.D.N.Y. 2014) ................................................................ 9

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ................................................................................. 1

*Kerman v. City of N.Y.*,
  374 F.3d 93 (2d Cir. 2004) ............................................................................... 1

*Kumho Tire Co., Ltd., v. Carmichael*,
  526 U.S. 137 (1999)........................................................................................ 10

*Morales v. City of N.Y.*,
  No. 99 Civ. 10004, 2001 WL 8594 (S.D.N.Y. Jan. 2, 2001)............................... 7

*Newton v. City of N.Y.*,
  --- F. Supp. 3d ----, 2016 WL 1071105 (S.D.N.Y. Mar. 17, 2016) ..................... 5

*Nimely v. City of N.Y.*,
  414 F.3d 381 (2d Cir. 2005) ...................................................................... 10, 11

*Patton v. City of N.Y.*,
  No. 00 Civ. 8875, 2002 WL 1428855 (S.D.N.Y. June 27, 2002)......................... 7

*Rasanen v. Doe*,
  723 F.3d 325 (2d Cir. 2013) ............................................................................. 2

*Rezulin Prods. Liability Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................... 13

*State v. Brown,*
    836 S.W.2d 530 (Tenn. 1992) ....................................................................... 11

*United States v. Edwards*,
    342 F.3d 168 (2d Cir. 2003) ........................................................................... 5

*United States v. Rodella*,
    No. 14 Cr. 2783, 2014 WL 6634154 (D.N.M. Nov. 18, 2014) ........................... 11

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988) ......................................................................... 14

*Warner v. Orange Cnty. Dep't of Probation*,
    115 F.3d 1068, 1071 & n.2 (2d Cir. 1996) ................................................. 1, 2

**Statutes, Rules, and Regulations**

Fed. R. Evid. 401 ........................................................................................... 3

Fed. R. Evid. 402 ................................................................................... 3, 4, 8

Fed. R. Evid. 403 ..................................................................................... *passim*

Fed. R. Evid. 404 ..................................................................................... 5, 9

Fed. R. Evid. 702 ..................................................................................... *passim*

Fed. R. Evid. 801 ........................................................................................... 6

Fed. R. Evid. 802 ........................................................................................... 6

N.Y. Penal Law § 220.16 .................................................................................. 4

N.Y. Penal Law § 65.05 .................................................................................... 4

**I.      THERE IS NO TRIABLE ISSUE AS TO WHETHER DET. CONNOLLY
        PROXIMATELY CAUSED MR. COLLADO'S INJURIES, AND THE JURY
        SHOULD BE INSTRUCTED THAT PROXIMATE CAUSE IS ESTABLISHED**

        In the parties' proposed jury charge, Plaintiff proposes that the jury be instructed

that Det. Connolly proximately caused Mr. Collado's death as a matter of law. Defendants

object. There is no triable issue of fact as to whether Det. Connolly proximately caused Mr.

Collado's death. The jury should be instructed as a matter of law that the proximate cause

element of Plaintiff's claims is satisfied. Proximate cause is typically a jury question, but it can

be resolved as a matter of law where there is no triable issue for the jury. *See, e.g.*, *Gray v.

Wackenhut Servs., Inc.*, 446 F. App'x 352, 353 (2d Cir. 2011); *Duguay v. City of N.Y.*, 861 F.

Supp. 2d 236, 249 (S.D.N.Y. 2012).

        Section 1983 incorporates common law tort liability principles, pursuant to which

Det. Connolly is liable for the natural and foreseeable consequences of his wrongful actions. *See

Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (collecting cases). As a matter of law, a

proximate cause need not be an exclusive cause, but only a "substantial factor in bringing about

the injury." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000); *accord*

N.Y. Pattern Jury Instr.—Civil 2:71. Det. Connolly is liable for the reasonably foreseeable

consequences of his own actions, as well as for "those consequences attributable to reasonably

foreseeable intervening forces, including the acts of third parties." *Kerman v. City of N.Y.*, 374

F.3d 93, 126 (2d Cir. 2004). The intervening act of a third party will only break the chain of

causation and cut off liability where it is unforeseen and abnormal, rather than a reasonably

foreseeable byproduct of the situation the defendant created. *See Warner v. Orange Cnty. Dep't

of Probation*, 115 F.3d 1068, 1071 & n.2 (2d Cir. 1996).

1

Here, there is no factual dispute that Mr. Collado's death was a homicide. *See* Ex. 1[1] (autopsy concluding that the "cause of death" was a "gunshot wound of abdomen" and the "manner of death" was "homicide"). There is no dispute that Det. Connolly shot Mr. Collado intentionally. No one has ever suggested that Det. Connolly fired his weapon accidentally. And there can be no dispute that death is a natural and foreseeable consequence of shooting someone, as are pain and suffering and pecuniary losses that accompany death. That is why the parties agree that the Second Circuit's mandatory jury instruction for the use of *deadly* force is required, in some form or another, in this case. *See Rasanen v. Doe*, 723 F.3d 325, 337 (2d Cir. 2013); Proposed Jury Instruction No. 5. Defendants cannot possibly question that Det. Connolly intentionally used force that reasonably foreseeably caused death.

Nor can Defendants contest proximate causation in any other way. Defendants have adduced no evidence suggesting that anything that happened to Mr. Collado after he was shot, whether on the street, in the ambulance, or at the hospital, was an unforeseeable intervening cause of his death that breaks the chain of causation. *Cf. Warner*, 115 F.3d at 1071 & n.2. None of Defendants' witnesses are competent to testify that the medical treatment Mr. Collado received—partly from City employees, and partly at the hospital where City employees brought him—was somehow unforeseeably inadequate.

In short, Defendants have no good-faith basis to contest that Det. Connolly's shooting of Mr. Collado proximately caused the injuries suffered by Mr. Collado and his estate. The only issue in this case is whether the shooting was reasonable. Instructing the jury on proximate cause would be confusing, distracting, and unnecessary. The Court should conclude that this element is satisfied as a matter of law and so instruct the jury.

---

[1]   All citations to "Ex. __" refer to exhibits attached to the Declaration of Samuel Shapiro, dated September 16, 2016.

II.     **THE TOXICOLOGY REPORTS SHOULD BE EXCLUDED AND ALL REFERENCES THERETO REDACTED**

After Det. Connolly shot him on September 6, 2011, Mr. Collado was taken to Harlem Hospital Center. A urinalysis was performed, which was positive for "opiates" and negative in all other respects. Ex. 2. The reason for this positive result is that Mr. Collado had recently been given morphine by medical personnel, and morphine shows up in a urinalysis "almost immediately." Ex. 3, Ramcharan Dep. at 107:13-20, 112:3-9.

On September 8, 2011, a toxicology analysis was performed during the autopsy of Mr. Collado. Ketamine, norketamine, and etomidate were detected. Ex. 4. Ketamine and etomidate are commonly used anesthetics; the body metabolizes ketamine into norketamine. *See* Ex. 3, Ramcharan Dep. at 68:4-14; *see also* Madhuri S. Kurdi et al., *Ketamine: Current Applications in Anesthesia, Pain, and Critical Care*, 8 Anesthesia: Essays and Research 283 (2014), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4258981. Mr. Collado had been placed under general anesthesia for surgery at Harlem Hospital on September 6.

The toxicology reports are irrelevant and extremely prejudicial. *See* Fed. R. Evid. 402, 403. They are probative of nothing except the undisputed facts that Mr. Collado was given morphine and general anesthesia, both of which can be readily established through other evidence. The reports have no tendency to suggest that any fact material to the reasonableness of Det. Connolly's actions is more or less likely to be true. *See* Fed. R. Evid. 401. Specifically, they have no tendency to suggest that Mr. Collado was under the influence of drugs at the time of the shooting—a proposition for which there is no evidence of any kind. Defendants have provided no medical expert testimony or other competent evidence to explain how the toxicology reports could support any valid inference about Mr. Collado's condition at the time of the shooting.

3

The potential prejudice to Mr. Collado from introducing the toxicology reports is immense. They invite the jury to speculate about whether Mr. Collado was under the influence of opiates or ketamine (which can also be used as a recreational drug, in addition to its legitimate medical purposes) when he was killed, even though there is no evidence at all that he was. The risk of prejudice associated with such unsupported speculation vastly outweighs the records' nonexistent probative value.

The medical records also contain notes that refer to the toxicology results. *See e.g.*, Ex. 2 at P000109 ("U tox positive for opiates"). For the same reasons, these references should be redacted from any records admitted into evidence.

## III. EVIDENCE OF MR. COLLADO'S PRIOR CONVICTION SHOULD BE EXCLUDED FOR ALL PURPOSES

Defendants have represented that they do not intend to elicit evidence regarding Mr. Collado's prior arrests or conviction, but reserve the right to introduce the conviction, depending upon the nature of Plaintiff's damages case.[2] Any evidence of Mr. Collado's conviction should be excluded for all purposes. It is irrelevant to the damages Plaintiff seeks, and any slight probative value would be outweighed by a severe risk of unfair prejudice that might spill over to the question of liability. *See* Fed. R. Evid. 402, 403.

Mr. Collado has one prior conviction. In 2007, he pled guilty to attempted criminal possession of a controlled substance in the third degree under N.Y. Penal Law § 220.16. He was sentenced to three years of conditional discharge—a lesser sentence than probation under New York law. *See* N.Y. Penal Law § 65.05.

---

[2]     Plaintiff understands that Defendants are reserving their right to introduce evidence of Mr. Collado's prior conviction, but not of his prior arrests. To the extent Plaintiff has misunderstood Defendants' reservation and Defendants seek to introduce evidence of Mr. Collado's prior arrests, Plaintiff objects and reserves the right to explain to the Court why such evidence is plainly inadmissible.

Plaintiff seeks four categories of damages: pain and suffering, loss of enjoyment of life (referring to the intrinsic value of Mr. Collado's life), monetary losses to the distributees of Mr. Collado's estate, and funeral expenses. Mr. Collado's personal qualities are relevant to one of these categories: the loss of the parental guidance and support Mr. Collado would have provided to his children if Det. Connolly had not killed him. Plaintiff intends to elicit evidence concerning Mr. Collado's role as a husband and father, the services he performed for his family, and the guidance and emotional support he provided his children. On these matters, there is virtually no relevance to the fact that Mr. Collado was convicted nine years ago of a nonviolent offense for which he served no jail time.

To the extent a single conviction for a nonviolent offense with no jail time has any slight probative value concerning Mr. Collado's value as a father, it is overwhelmingly outweighed by the risk of unfair prejudice. Courts frequently exclude reference to prior convictions for damages purposes under Rule 403. *See, e.g.*, *Newton v. City of N.Y.*, --- F. Supp. 3d ----, 2016 WL 1071105, at *11-12 (S.D.N.Y. Mar. 17, 2016) (evidence of nature of conviction excluded for damages purposes in case involving incarcerated plaintiff); *Davis v. Velez*, 15 F. Supp. 3d 234, 251-52 (E.D.N.Y. 2014) (evidence of prior incarceration excluded for damages purposes under Rule 403).

The risk of unfair prejudice is particularly acute in this case because the jury might infer that Mr. Collado, by virtue of his prior conviction, was using or dealing drugs on the day he was shot and killed. In addition to being wholly unsupported by the evidence, *see infra*, Point IV, any such inference would depend upon impermissible propensity reasoning—because Mr. Collado once possessed drugs in 2006, he is more likely to have done so on September 8, 2011. *See* Fed. R. Evid. 404; *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003).

Complete exclusion of the conviction is especially warranted here to prevent the jury from drawing this impermissible inference.

## IV.   ALL ARGUMENT AND EVIDENCE THAT MR. COLLADO EVER USED OR SOLD DRUGS SHOULD BE EXCLUDED

There is no evidence that Mr. Collado was doing or selling drugs on September 6, 2011, the day he was shot and killed by Det. Connolly. Without any testimony or documentary evidence, Defendants must be precluded from arguing or even suggesting that Mr. Collado was involved with drugs on September 6, 2011.

Further, Defendants should also be precluded from arguing or suggesting that Mr. Collado *ever* used or sold drugs. Aside from his prior conviction, which should be excluded for the reasons set forth *supra*, the only evidence that Mr. Collado did or sold drugs in the past is hearsay testimony from one of Defendants' witnesses, Ana Chapman, who testified at her deposition that she knew Mr. Collado used drugs because her "girlfriend" told her he did. *See* Ex. 5, Chapman Dep. at 17:3-14. Ms. Chapman's testimony plainly concerns an out-of-court statement that, if offered, would be used to prove the truth of the matter asserted. *See* Fed. R. Evid. 801. It should be precluded as hearsay at trial. *See* Fed. R. Evid. 802.

Without any admissible evidentiary support, Defendants should not be permitted to argue or suggest to the jury that Mr. Collado ever used or sold drugs.

## V.   ANY REFERENCE TO MR. COLLADO AS A "PERP" SHOULD NOT BE PERMITTED AT TRIAL

Several documents that may be introduced at trial refer to Mr. Collado as a "perp." All such references should be redacted because they are unduly prejudicial. *See* Fed. R. Evid. 403.

The term "perp"—short for perpetrator—defines Mr. Collado as a criminal. The central factual dispute in this case is whether Det. Connolly's actions were justified, which may

depend on whether Mr. Collado choked Det. Connolly. Allowing the jury to see documents that refer to Mr. Collado as a perpetrator would plainly prejudice Plaintiff by suggesting to the jury that Mr. Collado committed a crime. Any probative value that the references have is minimal and far outweighed by the prejudice Plaintiff would suffer by their introduction.

## VI.    EVIDENCE OF FINDINGS OF OFFICIAL INVESTIGATIONS INTO THE KILLING SHOULD BE EXCLUDED, AND THE PARTIES SHOULD MINIMIZE ANY REFERENCE TO THE INVESTIGATIONS

Defendants have informed Plaintiff that they do not intend to introduce any evidence of the findings of the investigations into the shooting by the NYPD Firearm Discharge Review Board, the New York County District Attorney, or the grand jury. Any such evidence would not be relevant and would intrude upon the jury's central function in this case: to determine whether it was reasonable for Det. Connolly to shoot Mr. Collado. *See, e.g.*, *Patton v. City of N.Y.*, No. 00 Civ. 8875, 2002 WL 1428855, at *1 (S.D.N.Y. June 27, 2002); *Morales v. City of N.Y.*, No. 99 Civ. 10004, 2001 WL 8594, at *6 n.4 (S.D.N.Y. Jan. 2, 2001).

At trial, there may be a need to refer to interviews, testimony, or other events that occurred in the course of these investigations. To the greatest extent possible, the parties should avoid reference to an "investigation" or "investigations," and should simply ask witnesses about interviews, statements, or testimony they gave previously. Where necessary, the parties can refer to "the investigation" without further detail. *See Guzman v. Jay*, 303 F.R.D. 186, 193 (S.D.N.Y. 2014).

## VII.   ANY REFERENCE TO MR. COLLADO'S DECADES-OLD WRESTLING SHOULD BE PRECLUDED

Defendants should be precluded from introducing any evidence concerning Mr. Collado's background as an amateur wrestler decades before he was shot and killed.[3] Mr. Collado's decades-old wrestling is irrelevant and highly prejudicial. *See* Fed. R. Evid. 402, 403.

Det. Connolly was unfamiliar with Mr. Collado and could not have known that Mr. Collado once wrestled as a young man. Mr. Collado's limited wrestling background is therefore irrelevant to whether Det. Connolly's use of force was objectively reasonable under the circumstances he confronted. Nor is Mr. Collado's background as an amateur wrestler probative of the actions Mr. Collado took on the day he was shot and killed. Any such argument would lack any evidentiary foundation, as there is no evidence that Mr. Collado used a "wrestling move" or that any of Mr. Collado's alleged conduct on the day in question bore any relationship to his wrestling as a young man. Specifically, there is no evidence that the kind of wrestling in which Mr. Collado participated involved "chokeholds," or that Mr. Collado or other amateur wrestlers during that era were trained in the use of "chokeholds." In short, the fact that Mr. Collado participated in amateur wrestling matches decades ago has no probative value.

The only purpose Defendants could have for bringing up Mr. Collado's involvement in wrestling as a young man is to portray him as brutish and predisposed to violence. The unfair prejudicial effect of that inflammatory characterization far outweighs the nonexistent probative value of the evidence. *See* Fed. R. Evid. 403. And any suggestion that Mr.

---

[3]     Mr. Collado's adult son, John Collado, Jr., testified that when he was young, his father occasionally wrestled in informal matches in garages.  *See* Ex. 6, John Collado Jr. Dep. at 18:19-19:2.  Mr. Collado's twenty-year-old daughter, Amy Collado, testified that Mr. Collado wrestled before she was born.  *See* Ex. 7, Amy Collado Dep. at 11:12-13.  Amarilis Collado testified that Mr. Collado was an amateur wrestler when he was "very young," before she knew him.  Ex. 8, Amarilis Collado Dep. at 42:25-43:15.

Collado must have assaulted Det. Connolly because he wrestled in the past depends upon plainly improper propensity reasoning. *See* Fed. R. Evid. 404.

## VIII.   DEFENDANTS' EXPERT DANIEL MODELL SHOULD BE PRECLUDED FROM TESTIFYING

One of Defendants' proposed experts, Daniel Modell, should not be permitted to testify because he is unqualified and his opinions are unreliable and unhelpful to the trier of fact.

Specifically, Mr. Modell should be precluded from offering the following opinions: (1) "[i]t is not at all surprising that Detective Connolly showed little observable evidence of being choked"; and (2) "it is reasonable to believe that Detective Connolly felt he was unable to breathe even without substantial compression of his windpipe." Ex. 9 at 4-5.

### A.    An Expert Must Be Qualified and an Expert Opinion Must Be Reliable and Helpful to the Trier of Fact

For expert testimony to be admissible, the witness must first be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Once an expert is deemed qualified, he may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

In considering whether an expert witness is qualified, "the threshold question is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." *Hilaire v. DeWalt Indus. Tools Co.*, 54 F. Supp. 3d 223, 235 (E.D.N.Y. 2014). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R.

9

Evid. 702 advisory committee notes. "In other words, expert opinions are inadmissible if based on speculative assumptions." *Cerbelli v. City of N.Y.*, No. 99 Civ. 6846, 2006 WL 2792755, at \*2 (E.D.N.Y. Sept. 27, 2006).

The Court must also determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2012) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The Court's role is to make certain that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 152 (1999).

"[O]pinion evidence that is connected to existing data only by the *ipse dixit* of the expert" should not be admitted. *Id.* at 157; *see also Nimely v. City of N.Y.*, 414 F.3d 381, 399 (2d Cir. 2005) (rejecting expert testimony based on "unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion that the district court has the duty to exclude"). The Court must therefore "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

In exercising the gatekeeping role, courts typically consider a number of factors, including: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general

acceptance in the relevant scientific community." *Id.* at 266 (internal quotation marks and citations omitted).

"Even after determining that a witness is qualified as an expert to testify as to a particular matter, Fed. R. Evid. 702, and that the opinion is based upon reliable data and methodology, Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely*, 414 F.3d at 397 (internal quotation marks omitted). The Second Circuit has "consistently held, in that respect, that expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Id.* (internal quotation marks and citations omitted).

### B.   Mr. Modell Is Not Qualified to Opine on the Physical Effects of Choking

Mr. Modell is not qualified to opine on whether choking is likely to lead to an observable injury. He is not a doctor; he has no medical training; he has never performed a medical exam on someone who was choked; he has never diagnosed someone who was choked; he has never treated someone who choked; and he does not claim to have ever even *seen* someone being choked in the manner Det. Connolly describes—*viz.*, so severely that Det. Connolly was lifted off the ground and unable to breathe or speak.

Courts have recognized that testimony concerning bruising "requires special skills and expertise beyond that which an ordinary person possesses." *See, e.g.*, *United States v. Rodella*, No. 14 Cr. 2783, 2014 WL 6634154, at *17 (D.N.M. Nov. 18, 2014) (considering expert testimony on the length of time it takes a bruise to manifest) (citing *State v. Brown,* 836 S.W.2d 530, 550 (Tenn. 1992)).

Mr. Modell does not possess the requisite special skills or expertise. He has been a NYPD officer for his entire career. He has never gone to medical school or received any medical training. His sole degrees are in philosophy. He has taught and organized many training sessions and been certified on the *use* of force, but never on recognizing, diagnosing, or treating the *physical effects* of the use of force. *See* Ex. 9 at 1.

None of Mr. Modell's education, training, or experience qualifies him to identify under what circumstances a headlock or chokehold would cause observable physical injury. He is simply a lay NYPD officer.[4]

**C.    Mr. Modell's Opinions Are Unreliable**

Mr. Modell cites no data or studies to support his opinion that Det. Connolly's lack of observable injury after allegedly being choked is "not at all surprising." Nothing suggests that his opinion can be or has been tested, has been subjected to peer review or publication, or is "general[ly] accept[ed]" within the "relevant scientific community." *See Daubert*, 509 U.S. at 593-94.

Lacking medical training, medical experience, data, and scientific studies, Mr. Modell relies entirely on his practical experience at martial arts competitions and NYPD training sessions. *See* Ex. 9 at 4. His anecdotal observations at these events, however, hardly form a reliable basis for his opinion. And in any event, Rule 702 requires an expert "relying solely or primarily on experience" to "explain how that experience leads to the conclusion reached, why

---

[4]    While not strictly relevant to his qualifications, Mr. Modell's testimony is also infected by his palpable bias. Part of his job for the NYPD is to provide testimony in cases in which officers have been accused of using excessive force. *See* Ex. 10, Modell Dep. at 19:22-20:2. He has testified as a Rule 30(b)(6) witness for the NYPD on the use of force on approximately five occasions. *See id.* at 7:10-8:20. And he has never testified that any NYPD officer has acted in a manner that was inconsistent with NYPD policy or unreasonable under the circumstances. *See id.* at 18:10-17.

that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee notes. Mr. Modell has not done so.

Mr. Modell's opinion that "it is reasonable to believe that Detective Connolly felt he was unable to breathe even without substantial compression of his windpipe" is also unreliable. *See* Ex. 9 at 5. Mr. Modell opines that it is reasonable to feel you cannot breathe even if your windpipe is not substantially compressed when you are in the midst of a "violent struggle" where "desperation" and "panic" are sure to set in. *See id.* at 4. Mr. Modell offers no basis for this opinion. He does not cite any literature or study, nor does he identify any methodology by which he arrived at his opinion.

At best, Mr. Modell's opinion is based on his experience in "controlled settings" in which he or someone else has been choked, but "not in a way where their air is completely cut off." *See* Ex. 10, Modell Dep. at 86:24-87:5. But such "controlled settings" are vastly different from the "violent struggle" about which Mr. Modell opines. Mr. Modell has never been in or seen a "violent struggle" in which a windpipe was compressed; he has never felt or seen the "sense of desperation" and "panic" he describes. He simply assumes what it must feel like to be in such a struggle without offering any data, study, or even practical experience to support his assumptions. "He proposes to give an expert opinion based on a guess, not facts." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 566 (S.D.N.Y. 2004) (excluding expert opinion that was based on expert's mere assumptions).

**D.    Mr. Modell Should Be Precluded from Opining on Det. Connolly's Credibility**

Mr. Modell's opinion that Det. Connolly's testimony is "reasonable" constitutes an evaluation of Det. Connolly's credibility and thus usurps the role of the jury. "The credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to

13

the credibility of the testimony of other witnesses at the trial." *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) (internal citation omitted). Here, Mr. Modell wants to testify that "it is reasonable to believe" Det. Connolly's testimony that he felt he was unable to breathe. Ex. 9 at 5. That is tantamount to saying that Det. Connolly's testimony is credible. No expert, particularly not one as biased and unqualified as Mr. Modell, may testify that "it is reasonable to believe" a witness's testimony.

Dated: September 16, 2016
      New York, New York

                                        EMERY CELLI BRINCKERHOFF &
                                        ABADY LLP

                                        By: _____/s_____

                                        Matthew D. Brinckerhoff
                                        Earl S. Ward
                                        Samuel Shapiro
                                        600 Fifth Avenue, 10th Floor
                                        New York, NY 10020
                                        Tel. No.: (212) 763-5000
                                        Fax No.: (212) 763-5001

                                        *Attorneys for Plaintiff*