UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMARILIS COLLADO, as Administratrix of the
Estate of her husband JOHN COLLADO, SR.,

                    Plaintiff,

        -against-                                              No. 11 Civ. 9041 (DAB)

THE CITY OF NEW YORK, New York City
Police Department ("NYPD") Detective JAMES
CONNOLLY, Shield #4292,

                    Defendants.

**PLAINTIFF'S RESPONSES TO DEFENDANTS' MOTIONS *IN LIMINE***

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES .................................................................................ii-v

I.    No Basis Exists To Bifurcate This Trial ...................................................1

      A.    A Single Trial Will Be More Efficient ..............................................1

      B.    There Is No Risk Of Jury Confusion ................................................3

      C.    A Single Trial Will Not Prejudice Defendants ..................................4

      D.    Bifurcation Would Prejudice Plaintiff ..............................................5

II.   Denying Plaintiff The Opportunity To Prove And Argue That A Reasonable
      Officer Would Have Acted Differently Under The Circumstances Is Reversible
      Error .......................................................................................................6

III.  Det. Connolly's 2009 Shooting Is Relevant And Admissible ............................9

IV.   While Plaintiff Does Not Intend To Introduce Evidence Of Sgt. Smith's Discipline
      Stemming From The Underlying Incident, Plaintiff May Question Sgt. Smith
      About It .................................................................................................10

V.    Defense Counsel Should Not Be Permitted To Hide Their Identities From The Jury
      Or Mislead The Jury By Pretending Det. Connolly Will *Not* Be Indemnified.................11

VI.   There Is No Justification For Preventing Any Mention Of The Patrol Guide..................14

VII.  Plaintiff Should Be Permitted To Request A Specific Dollar Amount From The Jury.....15

VIII. Plaintiff Does Not Intend To Present Evidence On The Disciplinary Records Of Det.
      White, Det. Cote, Or P.O. Kantor .......................................................18

IX.   The Location Of Backup Is A Critical Aspect Of The Circumstances Confronting A
      Reasonable Officer In Det. Connolly's Position.............................................18

X.    No Basis Exists To Preclude Non-Party Witnesses Who Were Timely Identified From
      Testifying .................................................................................................20

XI.   Plaintiff Takes No Position On The Use Of A Jury Questionnaire, But Should Have
      Equal Input Into The Questions It Includes ..................................................21

XII.  Mr. Collado's Autopsy Photographs Should Not Be Excluded, But Plaintiff Does Not
      Anticipate Showing Them To The Jury......................................................21

i

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Agron v. Trs. of Columbia Univ.*,
   No. 88 Civ. 6294, 1997 WL 399667 (S.D.N.Y. July 15, 1997) .................................................. 1

*Aldous v. Honda Motor Co.*,
   No. 94 Civ. 1090, 1996 WL 312189 (N.D.N.Y. May 30, 1996) ...................................... 4

*Britt v. Garcia*,
   457 F.3d 264 (2d Cir. 2006) .................................................................................................... 4

*Brown v. City of N.Y.*,
   No. 13 Civ. 1018, 2016 WL 1611502 (S.D.N.Y. Apr. 20, 2016).............................. 15

*Brown v. City of New York*,
   798 F.3d 94 (2d Cir. 2015) .......................................................................................... 6, 7, 8

*Caletz ex rel. Estate of Colon v. Blackmon*,
   476 F. Supp. 2d 946 (N.D. Ill. 2007) ........................................................................... 17

*Caruolo v. A C & S, Inc.*,
   No. 93 Civ. 3752, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999) .......................... 17

*Caruolo v. John Crane, Inc.*,
   226 F.3d 46 (2d Cir. 2000) ............................................................................................. 16

*Consorti v. Armstrong World Indus., Inc.*,
   72 F.3d 1003 (2d Cir. 1995) .......................................................................................... 16

*Dallas v. Goldberg*,
   143 F. Supp. 2d 312 (S.D.N.Y. 2001) ...................................................................... 1, 2

*De Michele v. City of N.Y.*,
   No. 09 Civ. 9334, 2012 WL 4354763 (S.D.N.Y. Sept. 24, 2012).......................... 15

*Edwards v. City of N.Y.*,
   No. 08 Civ. 2199, 2011 WL 2748665 (E.D.N.Y. July 13, 2011) ...................... 17, 18

*Estate of Jaquez v. Flores*,
   No. 10 Civ. 2881, 2016 WL 1060841 (S.D.N.Y. Mar. 17, 2016) ............................ 7

*Estate of Jaquez v. Flores*,
   No. 10 Civ. 2881, Dkt. 263 at 690-91 (S.D.N.Y. Apr. 21, 2016).......................... 7, 8

*Graham v. Connor*,
   490 U.S. 386 (1989).......................................................................................................... 19

*Gyasi v. City of New York,*
  No. 05 Civ. 9453 (SAS) (S.D.N.Y.) ............................................... 13, 14

*Hamilton v. Garlock, Inc.,*
  96 F. Supp. 2d 352 (S.D.N.Y. 2000) .................................................. 16

*Jackson v. Firestone Tire & Rubber Co.,*
  788 F.2d 1070 (5th Cir. 1986) .......................................................... 21

*Jenkins v. City of N.Y.,*
  No. 96 Civ. 4421, 2004 WL 2624872 (S.D.N.Y. Nov. 17, 2004) ............................ 21

*Kerman v. City of N.Y.,*
  No. 96 Civ. 7865, 1997 WL 666261 (S.D.N.Y. Oct. 24, 1997) ............................... 1

*Lewis v. City of N.Y.,*
  689 F. Supp. 2d 417 (E.D.N.Y. 2010) .............................................. 1, 4

*Lightfoot v. Union Carbide Corp.,*
  110 F.3d 898 (2d Cir. 1997) ............................................................. 16

*Marcoux v. Farm Serv. & Supplies, Inc.,*
  290 F. Supp. 2d 457 (S.D.N.Y. 2003) ................................................. 15

*Mathie v. Fries,*
  121 F.3d 808 (2d Cir. 1997) ............................................................. 13

*Miller v. Am. Bonding Co.,*
  257 U.S. 304 (1921) ................................................................. 1, 6

*Mineo v. City of New York,*
  09 Civ. 2261, 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013) ............................. 5

*Monaghan v. SZS 33 Assocs., L.P.,*
  827 F. Supp. 233 (S.D.N.Y. 1993) ...................................................... 4

*Newton v. City of N.Y.,*
  --- F. Supp. 3d ---, No. 07 Civ. 6211, 2016 WL 1071105
  (S.D.N.Y. Mar. 17, 2016) .............................................................. 17

*Rasanen v. Doe,*
  723 F.3d 325 (2d Cir. 2013) ............................................................. 8

*Reilly v. Natwest Mkts Grp., Inc.,*
  181 F.3d 253 (2d Cir. 1999) ............................................................ 16

*Rosales v. Kelly,*
  No. 07 Civ. 10554, 2011 WL 5873374 (S.D.N.Y. Nov. 14, 2011) ........................ 11

*Salim v. Proulx,*
    93 F.3d 86 (2d Cir. 1996) ............................................................................ 8

*Scott v. Harris,*
    550 U.S. 372 (2007).......................................................................... 6, 7, 8

*Sharkey v. Penn Cent. Transp. Co.,*
    493 F.2d 685 (2d Cir. 1974) ...................................................................... 16

*Smart v. City of N.Y.,*
    No. 08 Civ. 2203, 2009 WL 862281 (S.D.N.Y. Apr. 1, 2009)................................. 15

*Smith v. Freland,*
    954 F.2d 343 (6th Cir. 1992) ...................................................................... 14

*Stanczyk v. City of N.Y.,*
    No. 11 Civ. 0249, 2013 WL 3208073 (E.D.N.Y. June 24, 2013) ............................. 17

*Svege v. Mercedes-Benz Credit Corp.,*
    329 F. Supp. 2d 283 (D. Conn. 2004)............................................................. 5

*Tate v. Colabello,*
    58 N.Y.2d 84 (1983) .............................................................................. 17

*Tennessee v. Garner,*
    471 U.S. 1 (1985)........................................................................... 6, 7, 8

*Thomas v. Kelly,*
    903 F. Supp. 2d 237 (S.D.N.Y. 2012) ........................................................... 17

*Tracy v. Freshwater,*
    623 F.3d 90 (2d Cir. 2010) ..................................................................... 7, 20

*TVT Records v. Island Def Jam Music Grp.,*
    257 F. Supp. 2d 737 (S.D.N.Y. 2003) ........................................................... 18

*United States v. Abel,*
    469 U.S. 45 (1984).................................................................................. 9

*United States v. Davis,*
    183 F.3d 231 (3d Cir. 1999) ...................................................................... 11

*United States v. Figueroa,*
    548 F.3d 222 (2d Cir. 2008) ....................................................................... 9

*United States v. Richter,*
    826 F.2d 206 (2d Cir. 1987) ...................................................................... 16

*United States v. Sessa,*
  806 F. Supp. 1063 (E.D.N.Y. 1992) ........................................................... 9

*Waldron v. Hardwick,*
  406 F.2d 86 (7th Cir. 1969) ...................................................................... 17

*Weather v. City of Mount Vernon,*
  474 F. App'x 821 (2d Cir. 2012) ................................................................ 7

*Williams v. McCarthy,*
  No. 05 Civ. 10230, 2007 WL 3125314 (S.D.N.Y. Oct. 25, 2007) ............... 11, 12

*Woodward v. Town of Brattleboro,*
  148 F. App'x 13 (2d Cir. 2005) ................................................................ 8, 15

**Rules & Regulations**

Fed. R. Civ. P. 42(b) ................................................................................... 1, 4

Fed. R. Evid. 401 ....................................................................................... 19

Fed. R. Evid. 608(b) ................................................................................... 11

# I.    NO BASIS EXISTS TO BIFURCATE THIS TRIAL

Defendants have not met their "burden of establishing that bifurcation is warranted." *Kerman v. City of N.Y.*, No. 96 Civ. 7865, 1997 WL 666261, at *5 (S.D.N.Y. Oct. 24, 1997). A single, unbifurcated trial will be more efficient, will not lead to jury confusion, and will not prejudice Defendants. Bifurcation, on the other hand, would prejudice Plaintiff.

Bifurcation is "the exception, not the rule, and the movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Lewis v. City of N.Y.*, 689 F. Supp. 2d 417, 428 (E.D.N.Y. 2010); *see also* Fed. R. Civ. P. 42(b), Advisory Committee Notes ("separation of issues for trial is not to be routinely ordered"); *Miller v. Am. Bonding Co.*, 257 U.S. 304, 308 (1921) ("The general practice is to try all the issues in a case at one time.").

"On a case-by-case basis, courts should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Lewis*, 689 F. Supp. 2d at 429.

In civil rights cases, such as this, courts in this Circuit routinely deny motions to bifurcate liability and damages. *See, e.g.*, *Lewis*, 689 F. Supp. 2d at 428-30; *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001); *Kerman*, 1997 WL 666261, at *5-6; *Agron v. Trs. of Columbia Univ.*, No. 88 Civ. 6294, 1997 WL 399667, at *1-4 (S.D.N.Y. July 15, 1997).

## A.    A Single Trial Will Be More Efficient

A single trial, rather than a bifurcated one, will be more efficient. There is considerable overlap between the liability and damages evidence—both witnesses and documents—and neither party will present evidence that is specific to punitive damages. Conducting two proceedings in which witnesses testify twice and documents are presented twice

hardly serves judicial economy. *See Dallas*, 143 F. Supp. 2d at 316 (declining to bifurcate liability and damages based, in part, on "the overlapping nature of the relevant evidence").

Defendants' contention that there is "zero overlap" between the liability witnesses and damages witnesses is simply wrong. *See* Defs.' Mem. at 6. Plaintiff anticipates calling four witnesses on damages: Dr. Michael Baden, Plaintiff, Amy Collado, and John Collado, Jr. Two of those four witnesses—Dr. Baden and Plaintiff—will also testify in the liability phase. Dr. Baden will testify in the liability phase about the forensic evidence that rebuts Det. Connolly's version of events, and Plaintiff will testify in the liability phase about where Mr. Collado was going when he left his apartment moments before Det. Connolly shot him.[1] It is inefficient to have two witnesses testify twice, particularly when one is an expert who would be forced to take two days away from his practice unnecessarily. There are only two pure damages witnesses—Amy Collado and John Collado, Jr.—and neither witness's testimony will be long or complex. None of Defendants' listed witnesses will testify on damages.

The documentary evidence overlaps as well. The autopsy report, Mr. Collado's Harlem Hospital medical records, photographs of Mr. Collado in Harlem Hospital, and Mr. Collado's x-rays are all relevant to Dr. Baden's opinions on both liability and damages. If the trial was bifurcated, significant time would be wasted reintroducing all of these exhibits in the damages phase. In fact, there are only three pure damages exhibits: Plaintiff's Trial Exhibits 14 and 26, which are short documents that note the severe conscious pain and suffering Mr. Collado experienced after being shot, and Plaintiff's Trial Exhibit 27, which lists the expenses related to Mr. Collado's funeral. All three exhibits are straightforward and will require very little testimony to explain.

---

[1]    Plaintiff may also testify about other matters relevant to liability, depending upon the Court's rulings on certain motions *in limine*.

There is also no evidence for the jury to consider that is specific to the question of punitive damages. Defendants should not be permitted to introduce any evidence of Det. Connolly's ability to pay a judgment (*see infra*, Section V), and Plaintiff does not intend to introduce evidence that Det. Connolly will be indemnified. If the jury chooses to award punitive damages, it will be based on a finding that Det. Connolly recklessly and callously disregarded Mr. Collado's rights—a determination that it will make based on the evidence presented on liability.

Given that many of the same witnesses and documents will be required to prove both liability and damages, and that there is very little pure damages evidence in this case, bifurcation would not be efficient. The time that would be saved during the liability phase is nominal, and any projected savings would only be realized in the event that Defendants prevail on liability, which is, at best, far from guaranteed. If a damages phase is required, the additional time spent on two deliberations, two sets of instructions, and overlapping witnesses and evidence would be substantial.

**B.      There Is No Risk of Jury Confusion**

Damages are not a "complicated issue" in this case (*contra* Defs.' Mem. at 6) and the jury will not be confused by considering liability and damages together. Defendants do not even contend otherwise. Plaintiff is not seeking lost wages and will therefore not be presenting complex economic evidence. Plaintiff seeks four categories of damages only: conscious pain and suffering, loss of life damages, loss of parental guidance damages, and funeral expenses. None of these categories of damages are particularly complex, nor do they require significant extrinsic evidence. The jury will not be confused by considering these issues along with liability.

## C.     A Single Trial Will Not Prejudice Defendants

Defendants contend that they would be prejudiced by a single trial because the jury may ignore the Court's instructions on the law and instead become more concerned with compensating Mr. Collado's family for his death. *See* Defs.' Mem. at 5. That argument fails as a matter of law because it is a "fundamental proposition that a jury is presumed to follow the instructions of the trial judge." *Britt v. Garcia*, 457 F.3d 264, 272 (2d Cir. 2006) (internal quotation marks omitted). Speculative sympathy is hardly a reason to believe the jury will be incapable of following the Court's instructions in this case.

Every injury or death case involves evidence of how the plaintiff has been injured and thus the potential for the jury's sympathies to be invoked. Nonetheless, bifurcation remains "the exception, not the rule." *Lewis*, 689 F. Supp. 2d at 428. Indeed, courts routinely deny motions to bifurcate that are based on nothing more than the sort of unspecified, speculative sympathy Defendants rely on here. *See, e.g.*, *Aldous v. Honda Motor Co.*, No. 94 Civ. 1090, 1996 WL 312189, at *2 (N.D.N.Y. May 30, 1996) (denying motion to bifurcate where there were no particular factors that "distinguish the potential for prejudice" from the "potential prejudice which is normally and customarily dealt with through an appropriate charge and curative instructions where necessary"); *Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) (defendants "failed to overcome the fundamental presumption which favors the trial of all issues to a single jury and underlies the assumption of Rule 42(b) that bifurcation, even in personal injury actions, is reserved for truly extraordinary situations of *undue* prejudice") (emphasis in original)).

In any event, bifurcation would hardly eliminate any speculative sympathy here since, even if the trial were bifurcated, the jury would still learn during the liability phase that Mr. Collado was killed and that he left behind a wife and children. *See Svege v. Mercedes-Benz*

*Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004) (denying motion to bifurcate liability and damages and noting that "whether the Court bifurcates the issues or not, the jury will learn during the liability phase that [plaintiff] died in the accident").

*Mineo v. City of New York*, 09 Civ. 2261, 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013), on which Defendants rely, is distinguishable.[2] There, plaintiff's damages stemmed in large part from the emotional trauma and post-traumatic stress he suffered as a result of being sodomized by the defendant police officer. The damages evidence thus consisted of "complicated, expert-based claims" relating to "post-traumatic stress and other damages issues." *Id.* at *2. Here, the evidence of Plaintiff's damages—which consists mostly of lay witness testimony—is hardly complicated. Moreover, in *Mineo*, there was "little overlap" between damages and liability witnesses. *Id.* Here, there is considerable overlap as two of the four damages witnesses are liability witnesses as well. The *Mineo* court does not cite a single other excessive force case in which liability and damages were bifurcated. *Mineo* is an outlier involving a sensational allegation of sodomy. It does not compel bifurcation here.

**D.     Bifurcation Would Prejudice Plaintiff**

Bifurcation would prejudice Plaintiff by incentivizing the jury to find in Defendants' favor. It is an undeniable truth that jurors often hope to minimize the length of their service. If the trial is bifurcated, the jurors will be told that a finding for Plaintiff will result in a second trial and a finding for Defendants means they can go home. That posture prejudices Plaintiff.

---

[2]      It is noteworthy that defense counsel, who has access to every civil rights case litigated by the Corporation Counsel's office, cites only *one* civil rights case in which a court has bifurcated liability and compensatory damages. Counsel's inability to cite additional cases confirms the well-established principle that bifurcation is the exception, not the rule.

Nothing justifies departing from the "general practice" to bifurcate this case. *Miller*, 257 U.S. at 308. Doing so would be inefficient, would not help the jurors understand the evidence, and would prejudice Plaintiff. Defendants' motion should be denied.

## II.   DENYING PLAINTIFF THE OPPORTUNITY TO PROVE AND ARGUE THAT A REASONABLE OFFICER WOULD HAVE ACTED DIFFERENTLY UNDER THE CIRCUMSTANCES IS REVERSIBLE ERROR

The Supreme Court has held that the objective reasonableness of an officer's use of force is evaluated under the totality of the circumstances confronting the officer at the time, which includes the alternatives available to him. For instance, in *Tennessee v. Garner*, 471 U.S. 1 (1985), considering the use of deadly force against a fleeing felon, the Court held: "[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape *and if, where feasible, some warning has been given*." *Id.* at 11-12 (emphasis added). Similarly, in *Scott v. Harris*, 550 U.S. 372 (2007), the Court considered potential alternatives in concluding that the use of deadly force was reasonable, noting that ceasing a high-speed pursuit rather than ramming a suspect off the road might not have achieved the desired result. *See id.* at 385-86; *see also id.* at 386 (Ginsburg, J., concurring) ("The inquiry described by the Court . . . is situation specific. Among relevant considerations: Were the lives and well-being of others . . . at risk? *Was there a safer way, given the time, place, and circumstances, to stop the fleeing vehicle?*" (emphasis added)).

The Second Circuit has also so held. In *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015), the Second Circuit reversed Judge Forrest's grant of summary judgment in favor of police officers on an excessive force claim. The Second Circuit explained:

> Here, on the undisputed facts, . . . no reason appears why, with Brown standing, each officer could not have simply held one of her arms, brought it behind her, and put handcuffs on her wrists. Or

they could have simply surrounded her . . . . We do not mean to imply that the availability of a less aggressive way of accomplishing an arrest necessarily means that the technique that was used is thereby shown to have been excessive. . . . But . . . the availability of a much less aggressive technique is at least *relevant to making the ultimate determination of whether excessive force was used*.

*Id.* at 102-03 (emphasis added); *accord Weather v. City of Mount Vernon*, 474 F. App'x 821, 823 (2d Cir. 2012) ("That an officer may have been justified in directing plaintiff toward the wall, without making further inquiry does not mean that an officer would have been justified in twisting Weather's arm and slamming him into the brick wall." (internal quotation marks and alterations omitted)).

Defendants are of course correct to point out that the mere existence of a less intrusive alternative does not make the force used by the officer per se unreasonable. *See* Defs.' Mem. at 7 (citing *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). But that does not mean that alternative courses of action are irrelevant in determining whether the force used was excessive. *See Brown*, 798 F.3d at 102-03. To the contrary, the options available to an officer under the circumstances he confronted at the scene inform the determination of whether the option he chose was objectively reasonable. *See Scott*, 550 U.S. at 385-86; *Garner*, 471 U.S. at 11-12; *Brown*, 798 F.3d at 102-03. Denying Plaintiff the opportunity to elicit evidence and offer argument that a reasonable officer would have acted differently under the circumstances would be contrary to precedent and would deny her the ability to prove the central element of her case.[3]

---

[3]     In light of Supreme Court and Second Circuit precedent, the statement in *Estate of Jaquez v. Flores*, No. 10 Civ. 2881, 2016 WL 1060841, at *5  (S.D.N.Y. Mar. 17, 2016), that an inquiry into the reasonableness of an officer's use of force "does not include an evaluation of the choices, or lack thereof, the officer has at his disposal at the relevant moment" is simply not correct. Defendants' heavy reliance on *Jaquez* (*see* Defs' Mem. 7, 8, 20, 21), rather than binding precedent, is telling—particularly because, as previously mentioned, Defendants' counsel has ready access to the jury instructions given in *every* excessive force trial against City law enforcement officers. This Court should be guided by authoritative statements of the law rather than a single cherry-picked outlier.

Defendants' representation that courts in this Circuit "regularly charge juries . . . that they should not consider less intrusive alternatives" is simply false. Defs.' Mem. at 8. The instructions cited by Defendants state that the jury *need not find* that the police officer used the least intrusive means available in order to find in his favor. *See Jaquez*, No. 10 Civ. 2881, Dkt. 263 at 690-91 (S.D.N.Y. Apr. 21, 2016); *Gilliard v. City of N.Y.*, No. 10 Civ. 5247, Dkt. 38 at 240 (E.D.N.Y. Jan. 22, 2013). That is entirely different from instructing the jury that it *may not consider* less intrusive alternatives in evaluating whether the chosen alternative was reasonable. Plaintiff is unaware of any court that has given such an instruction—and with good reason, as it would be contrary to binding precedent.

Moreover, evidence of available alternatives is critical in determining whether an objectively reasonable officer in Det. Connolly's position would have had probable cause to believe that Mr. Collado posed a significant threat of death or serious physical injury at the time of the shooting. *See Rasanen v. Doe*, 723 F.3d 325, 337 (2d Cir. 2013).  Det. Connolly's use of deadly force was unreasonable as a matter of law unless he reasonably believed that Mr. Collado posed an "*immediate*" threat.  *Woodward v. Town of Brattleboro*, 148 F. App'x 13, 14 (2d Cir. 2005) (emphasis added); *accord Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996). If Det. Connolly feasibly could have warned Mr. Collado before shooting him, or taken other action to resolve the situation without deadly force, that fact is powerful proof that it was unreasonable for Det. Connolly to believe that Mr. Collado posed an *immediate* threat to his life. Contrary to Defendants' argument, eliciting evidence on this issue poses no risk of unfair prejudice at all, as it is also entirely proper for the jury to consider what alternatives were available to Det. Connolly in evaluating the reasonableness of the force he employed. *Scott*, 550 U.S. at 385-86; *Garner*, 471 U.S. at 11-12; *Brown*, 798 F.3d at 102-03.

**III.    DET. CONNOLLY'S 2009 SHOOTING IS RELEVANT AND ADMISSIBLE**

The 2009 shooting is relevant because it bears on Det. Connolly's credibility and admissible because any prejudice to Defendants from its introduction does not substantially outweigh its probative value.

"'The jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.'" *United States v. Figueroa*, 548 F.3d 222, 228 (2d Cir. 2008) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)); *see also United States v. Sessa*, 806 F. Supp. 1063, 1066 (E.D.N.Y. 1992) ("Evidence bearing on the credibility of a witness is encompassed comfortably within the broad rule of relevance of the Federal Rules of Evidence.").

The knowledge and experience Det. Connolly gained in the wake of the 2009 shooting helped him frame his alleged justification for shooting Mr. Collado. Because of his experience in 2009, Det. Connolly knew, from the moment he shot Mr. Collado, what questions he would be asked, who would be asking them, when they would be asked, and, most importantly, what answers would lead to a finding that the shooting was justified. These were not uncharted waters for him. He lived through an investigation into a shooting two years earlier from which he emerged unscathed. That experience gave him the unique knowledge—most officers have never even fired their weapon, let alone killed someone—to formulate a story that would again lead to a finding that the shooting was justified.

Defendants undoubtedly intend to present evidence concerning Det. Connolly's actions in the immediate aftermath of the shooting of Mr. Collado and to argue that these actions support the version of events to which Det. Connolly will testify at trial. Plaintiff should be permitted to rebut that argument by showing the jury that Det. Connolly knew precisely what

kind of "justification" to provide based on his experience in 2009 and that he began concocting such a "justification" in the immediate aftermath of the shooting.

Since it is relevant and probative, evidence of the 2009 shooting should not be excluded under Rule 403. Plaintiff does not intend to present evidence of the 2009 shooting to suggest that it was not justified or that Det. Connolly lied about the circumstances under which it took place. Rather, Plaintiff seeks to simply elicit that Det. Connolly shot and killed someone in 2009 during a narcotics operation, that he was investigated by the NYPD for doing so, and that the NYPD found the shooting to be justified. Defendants are hardly prejudiced by these simple truths. And even if they were, the probative value of these facts and the doubt that they cast upon Det. Connolly's credibility are not substantially outweighed by any minimal prejudice Defendants may face.

## IV. WHILE PLAINTIFF DOES NOT INTEND TO INTRODUCE EVIDENCE OF SGT. SMITH'S DISCIPLINE STEMMING FROM THE UNDERLYING INCIDENT, PLAINTIFF MAY QUESTION SGT. SMITH ABOUT IT

Plaintiff does not intend to introduce evidence that Sgt. Smith was disciplined in connection with his failure to supervise Det. Connolly and other members of the team on the day Mr. Collado was shot and killed.

However, Plaintiff may question Sgt. Smith about the discipline he received for interfering with the NYPD's investigation into the incident by making "misleading statements" and failing to "immediately clarify statements" he made to NYPD investigators. *See* Ex. 1.[4] And if Sgt. Smith denies being disciplined for such conduct, Plaintiff may impeach him with the appropriate disciplinary documents.

---

[4]     Citations to "Ex. __" refer to exhibits attached to the Declaration of Samuel Shapiro, dated September 30, 2016.

The fact that Sgt. Smith made "misleading statements" to the NYPD regarding this precise incident is relevant to Sgt. Smith's credibility and is therefore admissible under Fed. R. Evid. 608(b), which permits cross-examination on instances of a witness's conduct that are probative of his "character for truthfulness or untruthfulness." *See Rosales v. Kelly*, No. 07 Civ. 10554, 2011 WL 5873374, at *2 (S.D.N.Y. Nov. 14, 2011) (permitting, under Rule 608(b), inquiry into a correction officer's failure to report his use of force against an inmate coupled with his apparent attempt to fabricate an alternative explanation for the inmate's alleged injuries because such evidence "suggests a dishonest character"); *United States v. Davis*, 183 F.3d 231, 256-57 (3d Cir. 1999) (permitting, under Rule 608(b), inquiry into an Internal Affairs determination that police officer lied during an official interview).

Plaintiff also reserves the right to introduce evidence of Sgt. Smith's discipline if Defendants open the door through testimony, evidence, or argument concerning the propriety of Sgt. Smith's actions that day or his record as a police officer.

## V. DEFENSE COUNSEL SHOULD NOT BE PERMITTED TO HIDE THEIR IDENTITIES FROM THE JURY OR MISLEAD THE JURY BY PRETENDING DET. CONNOLLY WILL *NOT* BE INDEMNIFIED

Defense counsel asks the Court to hide their identities from the jury. The request is improper and should be denied.

The City of New York is still a defendant in this case and defense counsel represents the City. That *respondeat superior* is the basis for the City's liability is immaterial. Defendants do not cite a single case in which a party's identity, or that of its lawyers, has been hidden from the jury merely because the claims against it arise under the doctrine of *respondeat superior*.

Defendants' reliance on *Williams v. McCarthy*, No. 05 Civ. 10230, 2007 WL 3125314, at *7 (S.D.N.Y. Oct. 25, 2007), is entirely misplaced. There, the City was *no longer a*

*defendant at trial*. While Judge Scheindlin agreed not to inform the jury "that the City of New York was *once a defendant*" (emphasis added), she added that it "would be odd to identify defendants' attorneys only by name without a reference to the agency for which they work." *Id.* at *7. Judge Scheindlin's ruling in *Williams* does not apply here, where the City is still a defendant. And it would be nonsensical to hide from the jury the fact that the City is represented by its own lawyers.

Further, Plaintiff would be prejudiced if the City's presence in this case or the identity of the City's lawyers were concealed because it would limit the cross examination of Defendants' proposed expert witnesses, Daniel Modell (in the event Plaintiff's motion to exclude Mr. Modell's testimony is denied) and George Krivosta. Mr. Modell works for the New York City Police Department. Part of his job for the NYPD is to provide testimony in cases in which officers have been accused of using excessive force. *See* Ex. 2, Modell Dep. at 19:18-20:2. He has testified as a Rule 30(b)(6) witness for the NYPD on the use of force on approximately five occasions. *See id.* at 7:10-8:20. And he has never testified that any NYPD officer has acted in a manner that was inconsistent with NYPD policy or unreasonable under the circumstances. *See id.* at 18:10-17. While Mr. Krivosta does not work for the City, he has testified for the City numerous times and is being paid by the City for his testimony in this case. *See* Ex. 6.

Mr. Modell will testify in this case because it is part of his job and because he works for the NYPD, and both experts will testify because the *City* is paying them. This entire line of cross would be impossible if the City's role as a defendant and the true identities of defense counsel were hidden from the jury.

The apparent reason for Defendants' request is to prevent the jury from thinking that the City might indemnify Det. Connolly. This argument is moot though since Plaintiff does not intend to tell the jury that Det. Connolly will be indemnified by the City.

However, Defendants should also not be permitted to suggest or imply in any way that Det. Connolly will have to pay any judgment in this case. This is true even with respect to punitive damages. Defendants should not be permitted to introduce evidence of Det. Connolly's financial circumstances because the City will indemnify him for any damages awarded. As set forth below, the City *always* indemnifies police officers it represents when any damages, including punitive damages, are assessed against the officer. Any evidence of Det. Connolly's financial circumstances is therefore irrelevant, affirmatively misleading, and inadmissible. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources [as the basis for a reduction in punitive damages] if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders.").

The City will indemnify Det. Connolly for any damages awarded in this case, because it is the City's consistent practice to indemnify damage awards for police officers represented by the City Law Department. In sworn interrogatory responses in *Gyasi v. City of New York*, No. 05 Civ. 9453 (SAS) (S.D.N.Y.), the City swore that "there are no cases" in which the City Law Department "has represented a NYPD police officer and punitive damages have been assessed against the officer, and the City of New York has failed to indemnify the officer for punitive damages." Ex. 3, Interrogatory Response No. 5; *see also id.* at Interrogatory Response No. 7 ("there are no cases" where the City has failed to indemnify a police officer represented by the City Law Department for compensatory damages). In every case where

damages were awarded against an NYPD police officer represented by the Law Department, the City, *not* the officer, paid. *See id.*

Because the City will indemnify Det. Connolly for any damages awarded, evidence of his financial circumstances is affirmatively misleading and relevant to nothing. As Judge Scheindlin held in *Gyasi*:

> I am *not* going to mislead [the jury], thinking that [a damages award] comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000, whatever. I am not going to have all that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because *it's all irrelevant*.

Ex. 4 (Transcript of June 29, 2006 proceedings in *Gyasi*) at 6 (emphasis added).

Evidence of Det. Connolly's financial circumstances has no relevance: He will not pay a dime of any damages award, compensatory or punitive. But even if the evidence were somehow minimally relevant, its "relevance" would be substantially outweighed by the danger of prejudice and the risk of affirmatively misleading the jury. The jury should not be influenced by the mistaken belief that Det. Connolly will pay any damages assessed out of his own pocket. *See id.* at 6 (refusing to "mislead [the jury]").

## VI.   THERE IS NO JUSTIFICATION FOR PREVENTING ANY MENTION OF THE PATROL GUIDE

Defendants cite no federal excessive force case to support their assertion that the jury should be prevented from considering the NYPD Patrol Guide or the policies and procedures it codifies. Of course, the mere fact that an officer violated NYPD policy would not establish that his actions were objectively unreasonable, and the mere fact that an officer complied with NYPD policy would not establish that his actions were objectively reasonable. *See* Defs.' Mem. 15 (citing *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). Plaintiff has no

objection to an appropriate instruction that will make clear to the jury that the Patrol Guide is not dispositive of whether Det. Connolly's use of force was reasonable.

But NYPD policies and procedures are still relevant in determining how a reasonable NYPD officer would conduct himself under a given set of circumstances. *See, e.g.*, *Brown v. City of N.Y.*, No. 13-CV-1018, 2016 WL 1611502, at *8 (S.D.N.Y. Apr. 20, 2016) (violation of NYPD Patrol Guide "potentially relevant to the determination of whether excessive force was used"); *De Michele v. City of N.Y.*, No. 09 Civ. 9334, 2012 WL 4354763, at *21 n.15 (S.D.N.Y. Sept. 24, 2012) ("In the event that a defendant NYPD officer violated the NYPD Patrol Guide, that may be evidence of excessive force . . . ."); *Smart v. City of N.Y.*, No. 08 Civ. 2203, 2009 WL 862281, at *7 (S.D.N.Y. Apr. 1, 2009) (considering evidence of violation of Patrol Guide in denying summary judgment on excessive force claim). Plaintiff should be permitted to elicit evidence concerning the policies and procedures set forth in the Patrol Guide because they inform, even though they do not determine, how a reasonable NYPD officer would have acted under the circumstances. Whether Det. Connolly followed or considered following alternatives suggested by the Patrol Guide prior to using deadly force is also probative of whether he reasonably believed Mr. Collado posed an immediate deadly threat. *See Woodward*, 148 F. App'x at 14; *supra*, Section II.

## VII. PLAINTIFF SHOULD BE PERMITTED TO REQUEST A SPECIFIC DOLLAR AMOUNT FROM THE JURY

Plaintiff should be permitted to request that the jury award her a specific dollar amount.

It is well-established that district courts may "'give counsel wide latitude in formulating their arguments to the jury.'" *See Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 466 n.5 (S.D.N.Y. 2003) (quoting *Reilly v. Natwest Mkts Grp., Inc.*, 181 F.3d 253,

271 (2d Cir. 1999)); *see also United States v. Richter*, 826 F.2d 206, 209 (2d Cir. 1987) ( "the inherent controversial nature of litigation permits substantial latitude in the closing arguments of counsel").

The Second Circuit has specifically rejected a rule prohibiting counsel from suggesting lump-sum amounts or referring to specific damages amounts during closing arguments. *See, e.g.*, *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912-13 (2d Cir. 1997) (discussing and rejecting Third Circuit's per se rule); *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 57 (2d Cir. 2000) ("It was within the district court's discretion to find that [plaintiffs' suggestion of a specific damage amount] did not warrant a new trial"); *Sharkey v. Penn Cent. Transp. Co.*, 493 F.2d 685, 689 (2d Cir. 1974) ("We believe that the matter of estimating damages for the guidance of the jury is best left largely to the discretion of the trial judge, and that, if [s]he decides to permit the argument, no error will be committed at least where counsel makes clear that his figures are only suggestions, and the court instructs the jurors that the suggestions are not binding on them.").

Courts have repeatedly affirmed damages awards when counsel has referenced specific damages figures. *See, e.g.*, *Lightfoot*, 110 F.3d at 912-13 (affirming award where counsel asked for a specific award); *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995) (concluding that plaintiff's counsel's suggestion of a specific amount of damages did not unfairly influence jury, even though the jury awarded the precise amount suggested), *vacated on other grounds*, 518 U.S. 1031 (1996); *Hamilton v. Garlock, Inc.*, 96 F. Supp. 2d 352, 356 (S.D.N.Y. 2000) (denying motion for new trial because counsel conceded his numbers were not controlling and the district court gave specific instructions on the subject); *Caruolo v. A C & S, Inc.*, No. 93 Civ. 3752, 1999 WL 147740, at *16 (S.D.N.Y. Mar. 18,

1999) ("In this case, the jury was cautioned that the numbers suggested were simply that, a suggestion, which it was free to disregard. As the damages awarded were not excessive, as discussed below, no prejudice resulted from the suggestion by Plaintiffs' counsel."); *see also Caletz ex rel. Estate of Colon v. Blackmon*, 476 F. Supp. 2d 946, 959 (N.D. Ill. 2007) ("Therefore, under *Waldron* [*v. Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969)], we find that if a suitable cautionary instruction is given, plaintiff's counsel is free to suggest a lump sum non-economic award during closing argument.").

Courts in this district have repeatedly allowed plaintiffs to suggest specific dollar awards. *See, e.g.*, *Newton v. City of N.Y.*, --- F. Supp. 3d ---, No. 07 Civ. 6211, 2016 WL 1071105, at *12 n.94 (S.D.N.Y. Mar. 17, 2016) (counsel's suggestion of a damages figure during summation was not a basis for remittitur since "the Second Circuit allows attorneys to suggest dollar amounts to the jury where, as here, the jury receives an appropriate limiting instruction"); *Thomas v. Kelly*, 903 F. Supp. 2d 237, 265 (S.D.N.Y. 2012) (counsel's suggestion of a damages figure during summation did not result in an excessive award); *Stanczyk v. City of N.Y.*, No. 11 Civ. 0249, 2013 WL 3208073, at *5 (E.D.N.Y. June 24, 2013) ("[Counsel] could have requested the Court's permission to suggest some dollar amounts. If he had done so, the Court—as is its practice—would have allowed him to do so."); *Edwards v. City of N.Y.*, No. 08 Civ. 2199, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011) ("Plaintiff's counsel will be permitted to suggest a specific dollar amount in his closing statement, but must do so in the first argument in order for defense counsel to respond if he chooses to do so, before plaintiff's counsel makes his final argument. The Court will instruct the jury, as it always does, that statements by lawyers are not evidence or the law that they are to follow when they begin their deliberations.").[5]

---

[5]     This approach aligns with that of New York State courts. *See, e.g.*, *Tate v. Colabello*, 58 N.Y.2d 84, 87 (1983) (explaining that it is "counsel's privilege to place before the jury his client's contentions in this regard [the

Plaintiff should be permitted to ask for a damage amount from the jury. Plaintiff agrees with the *Edwards* court that, in fairness to Defendants, and so that Defendants have a fair opportunity to respond, Plaintiff should not make such a request for the first time in the rebuttal closing, but rather in the first closing argument.

## VIII.   PLAINTIFF DOES NOT INTEND TO PRESENT EVIDENCE ON THE DISCIPLINARY RECORDS OF DET. WHITE, DET. COTE, OR P.O. KANTOR

Plaintiff does not intend to present evidence concerning the disciplinary records of Det. White, Det. Cote, or P.O. Kantor. Plaintiff, however, reserves the right to offer such evidence if Defendants open the door through testimony, evidence, or argument concerning any of these officers' records as police officers.

With respect to Det. Connolly, Plaintiff seeks to introduce only minimal evidence concerning his 2009 shooting, as set forth *supra*, Section III. With respect to Sgt. Smith, Plaintiff seeks only to cross-examine him with respect to the discipline he received in this case for making misleading statements to NYPD investigators, as set forth *supra*, Section IV.

## IX.   THE LOCATION OF BACKUP IS A CRITICAL ASPECT OF THE CIRCUMSTANCES CONFRONTING A REASONABLE OFFICER IN DET. CONNOLLY'S POSITION

Plaintiff does not intend to argue that "any failure by Detective Connolly's team to provide him with adequate back up caused the shooting of John Collado, Sr." Defs.' Mem. at 19. Plaintiff has no interest in claiming that non-parties caused Mr. Collado's death. Plaintiff seeks to hold Det. Connolly liable for his own actions and to hold the City liable for Det. Connolly's actions within the scope of his official duties.

---

value of injuries and pain and suffering] and, to this end, he [is] entitled to state the amount of damages demanded" (internal quotation marks omitted)); *TVT Records v. Island Def Jam Music Grp.*, 257 F. Supp. 2d 737, 749-50 (S.D.N.Y. 2003) ("On balance, the Court, having been presented with no convincing basis to categorically preclude TVT from requesting in its summation a specific amount in punitive damages, and in light of both the acceptance of doing so in the context of compensatory damages and the deference under New York law permitting trial counsel latitude to address issues bearing upon matters to be determined by the jury, concludes that Defendants' request in this regard should be denied.").

However, Defendants are plainly wrong to assert that "[w]hat happened prior to Detective Connolly's interaction with Mr. Collado—especially as it pertains to non-party police officers who were members of his team that day—is completely irrelevant to the question of whether his use of deadly force was objectively reasonable at the time it occurred." *Id.* Plaintiff must be permitted to elicit testimony concerning the location of backup and Det. Connolly's expectations about whether backup was likely to arrive, among other salient features of the circumstances confronting Det. Connolly when he shot Mr. Collado. In addition to providing helpful context to the jury, this evidence is critical to the central issue in this case for two reasons. First, it will help the jury evaluate what was actually happening at the time of the shooting. Second, it will help the jury determine whether Det. Connolly acted reasonably under the circumstances he faced at the time.

Defendants claim that Det. Connolly was being choked within an inch of his life and responded with deadly force. Plaintiff will show that Det. Connolly faced a much less serious threat, if any, and used deadly force in a panicked overreaction to a bystander taking normal measures to help break up a street fight in his neighborhood. The jury must decide which of these narratives to believe. Evidence that Det. Connolly thought he was by himself and did not believe backup was arriving imminently has a tendency to make it more probable that Det. Connolly panicked and used deadly force in a situation that did not warrant it. *See* Fed. R. Evid. 401. It is therefore highly relevant. *See id.*

Moreover, whether Det. Connolly's use of force was excessive must be evaluated from the perspective of a reasonable officer "on the scene . . . at the moment," with "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Det. Connolly's knowledge of the location of backup, and his expectation as to

whether backup would arrive, is an essential part of the "facts and circumstances" he confronted on the scene at the time he decided to shoot Mr. Collado. A reasonable officer expecting backup to arrive imminently might behave differently than a reasonable officer who believed he was all alone. *See Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) (considering that "officer was proceeding on his own without the assistance of other officers" in determining whether officer's use of force was reasonable). Similarly, a reasonable officer who is aware that his partner is down the block might behave differently than a reasonable officer who did not know that help was mere seconds away.

## X.  NO BASIS EXISTS TO PRECLUDE NON-PARTY WITNESSES WHO WERE TIMELY IDENTIFIED FROM TESTIFYING

Without any basis, Defendants seek to preclude Stephanie Cruz, Francisco Hernandez, Eddie Perez, and Steven Polanco from testifying. Plaintiff identified all four witness as individuals likely to have discoverable information on March 17, 2014, and provided Defendants with each of their addresses. *See* Ex. 5. Defendants do not (and cannot) contend that anything more is required in order for Plaintiff to call these individuals as witnesses at trial.

Defendants did not, to Plaintiff's knowledge, attempt to serve a subpoena on Ms. Cruz or Mr. Perez; Defendants' time to seek their depositions has long since passed. Defendants thus have no basis to object to either Mr. Cruz or Mr. Perez testifying at trial. As for Mr. Hernandez and Mr. Polanco, Plaintiff bears no responsibility for their failure to appear for depositions. In fact, Plaintiff joined Defendants in requesting that the Court assist in securing the deposition of Mr. Hernandez. *See* Dkt. 39, 40.

Plaintiff has no control over any of these witnesses. Defendants have as much ability to locate and speak with them as Plaintiff. If Plaintiff is able to secure their appearances at trial and ultimately decides to call them, there is no basis to exclude any of these witnesses from

testifying. Defendants offer nothing to justify the "drastic remedy" of preclusion. *Jenkins v. City of N.Y.*, No. 96 Civ. 4421, 2004 WL 2624872, at *2 (S.D.N.Y. Nov. 17, 2004).

## XI. PLAINTIFF TAKES NO POSITION ON THE USE OF A JURY QUESTIONNAIRE, BUT SHOULD HAVE EQUAL INPUT INTO THE QUESTIONS IT INCLUDES

Plaintiff takes no position on the use of a jury questionnaire. However, if the Court is inclined to use one, Plaintiff should be provided an opportunity to suggest questions and comment on Defendants' proposed questions.

## XII. MR. COLLADO'S AUTOPSY PHOTOGRAPHS SHOULD NOT BE EXCLUDED, BUT PLAINTIFF DOES NOT ANTICIPATE SHOWING THEM TO THE JURY

Plaintiff does not anticipate showing the autopsy photographs to the jury unless it becomes strictly necessary to support Dr. Baden's testimony. Plaintiff listed them on her exhibit list because Dr. Baden reviewed them. Plaintiff does not believe the autopsy photographs will be necessary for Dr. Baden's testimony at trial. If they should become necessary—to rebut testimony from Defendants' experts or to respond to cross-examination, for example—Plaintiff reserves the right to offer the photographs at that time.

There is no basis to exclude the photographs under Rule 403 because Defendants will not be unduly prejudiced by their introduction. There is no dispute that Mr. Collado died. The photographs do not show Mr. Collado suffering or bleeding; they show him long after he passed away. Defendants do not explain why images of Mr. Collado's dead body so severely prejudice them that exclusion is warranted. The single case they cite involved images of "the victim bleeding profusely," *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1085 (5th Cir. 1986), which are easily distinguishable from the autopsy photographs here, all of which were taken after Mr. Collado's death.

To the extent the photographs are necessary to support Dr. Baden's testimony—and again, that is the only reason Plaintiff would seek to introduce them—their probative value far outweighs any minimal prejudice Defendants would face as a result of their introduction.

Consequently, the Court should allow Plaintiff to introduce the autopsy photographs if doing so becomes necessary to support Dr. Baden's testimony.

Dated: September 30, 2016
     New York, New York

EMERY CELLI BRINCKERHOFF & ABADY LLP


By: _____/s_____

Matthew D. Brinckerhoff
Earl S. Ward
Samuel Shapiro
600 Fifth Avenue, 10th Floor
New York, NY 10020
Tel. No.: (212) 763-5000
Fax No.: (212) 763-5001

*Attorneys for Plaintiff*
